670 So.2d 671 (1996)
STATE of Louisiana, Plaintiff-Appellee,
v.
Daniel Stephen TATE, Defendant-Appellant.
No. CR95-1152.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1996.
*672 Morgan J. Goudeau, III, Opelousas, David Michael Miller, Asst. Dist. Atty., for State of Louisiana.
William Tracy Barstow, Opelousas, Daniel J. Stanford, Eunice, for Daniel Stephen Tate.
Before DOUCET, C.J. and YELVERTON and SAUNDERS, JJ.
YELVERTON, Judge.
A jury convicted defendant, Daniel Stephen Tate, of two counts of armed robbery, in violation of La.R.S. 14:64. He was sentenced to 20 years at hard labor on count one and 25 years at hard labor on count two to run consecutively without benefit of probation, parole, or suspension of sentence. No motion to reconsider sentence was filed by defendant. Defendant now seeks review by this court alleging two assignments of error.
ERRORS PATENT:
There is one error patent. Defendant was not present at trial. La.Code Crim.P. art. 831 requires his presence.
Defendant was present on September 7, 1994, when his jury was impaneled. The trial court told the jury in defendant's presence to report back on September 20, 1994, the date of the trial. He was in other ways made aware on several occasions that September 20 would be the date of his trial. According to defense counsel, on Friday, September 16, counsel met with defendant to talk about the case, and told defendant to be at his office on September 19, the day before trial, but defendant did not show up. On September 20, his counsel was present for the trial but he was not. When defendant did not show up for trial, the court directed the sheriffs office and the bailiff to call defendant's father at work and to call the house where defendant lived. His father did not know where he was and there was no answer at the house. The trial judge forfeited the bond and issued a bench warrant. Defense counsel orally moved for a mistrial explaining that he had talked to defendant on Friday, defendant was apprised of the fact he had to be in court, and maybe something was wrong. The trial court denied the motion. Finding that defendant voluntarily absented himself from trial and having no reason to grant a mistrial, the trial court called for the jury to proceed with the trial.
A defendant who freely and voluntarily absents himself from his trial waives his right to be present. La.Code Crim.P. art. 832(A); State v. Humphrey, 576 So.2d 1104 (La.App. 3 Cir.1991). The trial judge, who understood the situation better than we do, was in the best position to determine whether the absence was voluntary. Defendant's absence from the hearing was voluntary, and it was not error to conduct the trial without him.
FACTS:
Mr. Cook's, a fast-food place in St. Landry Parish, was robbed on October 1, 1992, by an unidentified masked man while armed with a dangerous weapon. On December 27, 1992, Jet 24, a convenience store in St. Landry Parish, was robbed by two unidentified masked men. Deputies questioned defendant about both robberies. He gave two statements confessing to taking part in both robberies.
ASSIGNMENT OF ERROR NO. 1:
By this assignment of error, defendant argues that the verdict, on each count, is contrary to the law and evidence in that the evidence is insufficient to sustain a verdict of guilty and the evidence, when viewed in the light most favorable to the State, does not reasonably support a finding of guilt.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 *673 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1982).
In order for the State to obtain a conviction, it had to prove the elements of the crime beyond a reasonable doubt. Armed robbery is defined as the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La.R.S. 14:64. A principal is any person concerned in the commission of a crime, whether present or absent, and whether he directly commits the offense, aids and abets in its commission, or directly or indirectly counsels or procures another to commit the crime. La.R.S. 14:24. A person who aids and abets another in a crime is liable just as the person who directly commits it, although he may be convicted of a higher or lower degree of the crime, depending on the mental element proved at trial. State v. Watson, 397 So.2d 1337 (La.1981), cert. denied, 454 U.S. 903, 102 S.Ct. 410, 70 L.Ed.2d 222 (1981).
In the present case, the record reveals that the State first introduced the testimony of witnesses to prove that an armed robbery occurred. Afterwards, the State introduced defendant's two confessions to establish defendant's part as a principal in the commission of the armed robberies.
THE MR. COOK'S ROBBERY
Two witnesses testified about the robbery at Mr. Cook's. Brenda Savoie, who was the assistant manager, and Dana Richard, who was working the front cash register, along with defendant, who was the cook, were present at 10:00 p.m., closing time. The standard closing procedure required that the cook first clean the kitchen and then the parking lot. However, on the night of the robbery, defendant asked her if he could clean the lot before he cleaned the kitchen. It was Savoie's normal procedure to count the day's receipts in her office and then assist the person out on the lot, but she let him clean the lot first. Less than a minute after defendant went out the back door the robber came up behind her in her office, put a gun to her head, and told her to give him the money or he would shoot her. He was wearing a mask. Ms. Savoie testified that his gun looked like a revolver because it did not look like her own .25 automatic. After giving the robber the money bag containing around $1000, Ms. Savoie and Dana followed him to close the back door. When the robber was at the back door, defendant was by the trash dumpster. The robber told defendant to "get in here," fired a shot, and then ran. She closed the door and locked it leaving defendant outside, then called the police. She did not connect defendant to the robbery at the time.
The other employee, Ms. Dana Richard, testified that she first realized something was wrong when Brenda screamed and called for her to come into her office. When she entered the office she noticed a guy wearing a ski mask and holding a gun to Brenda's head. The robber asked for all the money from the register. After the money was put into the bag, the robber told them not to call the police, or he would come back for them. The robber then left. She testified she did not know where defendant was when the robber was in the room with her and Brenda. She also testified she did not associate defendant with the robbery at that time because she had no reason to, nor did she recognize or know the person who robbed the restaurant.
Mr. Tim Touchet, the general manager for Mr. Cook's, testified that defendant had been working at the restaurant approximately five months. He testified that cleaning the parking lot was part of the routine after closing. Normally, it was the last thing done after everything inside the restaurant was completed.
THE JET 24 ROBBERY
Ms. Bernice Wilson testified about the robbery at Jet 24. She stated that she was a teacher and worked part-time at Jet 24. Two men, one tall and the other short, came into the store wearing ski masks. The tall one opened his hand and told her to move around the counter because he had a gun. The tall one then asked her to open the register. He took the money. Ms. Wilson *674 testified she could not recognize the robbers and could not say that one of them was defendant; she just knew that defendant, her former student from the seventh grade, came to be arrested for the robbery.
DEFENDANT'S STATEMENTS
Two deputy sheriffs, Clifford Moore, the investigating officer, and Ramona Fruge, testified on behalf of the State. Deputy Fruge took two confessions from defendant, and these were introduced into the record. Deputy Moore investigated both robberies. He stated that three people were arrested; they were defendant, Gordon Ray Thomas, and Leon Cassimere, Jr.
In defendant's first statement he admitted that, before the robbery, he gave Gordon the information he wanted about the "ins and outs" of Mr. Cook's. He told Gordon that he took out the garbage at 10:00 p.m. As he was putting the trash in the dumpster on the night of the robbery, he saw Gordon wearing a ski mask coming out of the building. Gordon took a shot in his direction then took off. He had no knowledge where the gun came from. Gordon came by his house the night of the robbery but they didn't talk because defendant's father was present. The next day Gordon gave him $150.
In his second statement defendant said he had not told the truth in his first statement when he said he had no knowledge about a gun. He said he had a .25 caliber semi-automatic that he gave to Gordon. He added that he took part in the armed robbery of Jet 24 and that he took his father's truck to use. He said it was him, Leon, and Gordon.
Defendant's specific contention as to insufficiency of the evidence is that the State failed to prove he knew that the co-defendants Gordon Thomas and Leon Cassimere were going to use a dangerous weapon while robbing Mr. Cook's and Jet 24.
Defendant argues that none of the witnesses of either robbery gave any testimony proving that he was involved in the robbery, that he knew of the robbery, or that he knew Gordon Thomas or Leon Cassimere intended to use a weapon while committing the crime. Defendant cites Ms. Savoie's testimony where she described the gun as being a revolver and not the .25 caliber semi-automatic that defendant admitted owning and giving to Gordon Thomas. Defendant also claims the State offered no evidence that he was involved in the robbery at Jet 24 other than his statement given on January 13, 1993.
Before the State can rely on a defendant's confession to show his participation in a crime, the State has to prove that a crime occurred. State v. Cutwright, 626 So.2d 780, (La.App. 2 Cir.1993), writ denied, 93-2931 (La.2/25/94); 632 So.2d 761; State v. Howard, 505 So.2d 228 (La.App. 3 Cir.1987).
The State, through the testimony of eyewitnesses, proved that two robberies occurred, one at Mr. Cook's and the other at Jet 24, independently of defendant's confession. Once the crime was independently established, the State could use defendant's confessions to establish defendant's participation in the two robberies.
After the State proved two robberies were committed and defendant participated in those robberies, the State then had to prove that defendant's participation was sufficient to convict him as a principal.
La.R.S. 14:24 defines principals:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
Those persons who knowingly participate in the planning or execution of a crime are principals. State v. Pierre, 93-0893 (La.2/3/94); 631 So.2d 427. When a defendant admits he was present at a robbery and does not argue that his co-perpetrators coerced him to participate, these circumstances create a strong inference of intent. State v. Corkern, 461 So.2d 1238 (La.App. 1 Cir.1984). A defendant who drives the getaway car is a principal. State v. Baum, 533 So.2d 110 (La.App. 4 Cir.1988).
Defendant cites State v. Doucet, 93-1523 (La.App. 3 Cir.5/4/94); 638 So.2d 246, in *675 support of his contentions that the State failed to prove as an essential element of armed robbery that he knew that Gordon Thomas was going to use a dangerous weapon while robbing Mr. Cook's, and that the codefendants, Gordon Thomas and Leon Cassimere, were going to use a dangerous weapon while robbing Jet 24.
In State v. Doucet, 638 So.2d 246, this court reversed a conviction for first degree robbery and entered a conviction for simple robbery after noting that defendant did not enter the store where the armed robbery took place and did not know that the robber had a knife until after the robbery. The present case is distinguishable from Doucet. In defendant's first confession he admitted that, before the robbery of Mr. Cook's, he gave Gordon Thomas information about the restaurant, his job at the restaurant, especially at closing time (i.e. taking out the trash), and who would be working at the restaurant. Defendant also confessed to receiving $150 from Gordon Thomas after the robbery. He further stated that the robber shot a gun in his direction.
In defendant's second voluntary confession he admitted owning a .25 caliber semi-automatic and giving the gun to Gordon Thomas shortly before the robbery of Mr. Cook's. He also stated that he and Gordon Thomas discussed committing an armed robbery of Mr. Cook's where he worked.
Regarding the robbery of Jet 24, defendant admitted he actually took part in that robbery. Defendant stated that he took his father's truck for them to perform the robbery at Jet 24. In his second statement defendant referred to the Jet 24 incident as an "armed robbery." Defendant was aware of a weapon and its use in committing the Jet 24 robbery. As the driver of the getaway car, defendant was a principal to the robbery at Jet 24.
A rational trier of fact could have found that defendant possessed the requisite intent to assist in the commission of the robberies as a principal. The intent to commit these robberies can be inferred by his confessions. Also, defendant and Gordon Thomas participated in both the Mr. Cook's robbery and the Jet 24 robbery. Defendant gave Gordon Thomas information about the restaurant and a gun for the first robbery. Although defendant did not go inside Jet 24, defendant played an integral role in the second robbery by operating the getaway car. The evidence, when viewed in the light most favorable to the prosecution, was sufficient for the jury to find defendant guilty beyond a reasonable doubt. This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 2:
This assignment presents the arguments that the sentences imposed by the trial court are excessive and not supported by the presentence report or the Louisiana Sentencing Guidelines, and that the trial court did not issue sufficient reasons for deviating from the pre-sentence report.
In order to raise an objection to the sentence on appeal, defendant must make a motion to reconsider sentence which sets forth "a specific ground" upon which the motion is based. La.Code Crim.P. art. 881.1. Failure to do so precludes review, although a claim of constitutional excessiveness is preserved by a mere allegation that the sentence is excessive. State v. Mims, 619 So.2d 1059 (La.1993), after remand, 626 So.2d 856 (La. App. 2 Cir.1993), writ denied, 93-2933 (La.2/11/94); 634 So.2d 373. No objection to the sentence was made when sentence was pronounced nor was a motion filed to reconsider sentence.
Addressing the issue of constitutional excessiveness, we note that for the last 30 years in this state the penalty for armed robbery has been imprisonment at hard labor for not less than five years and for not more than ninety-nine years, without benefit of parole, probation or suspension of sentence. As the annotations under La.R.S. 14:64 show, courts have shown no great reluctance in imposing maximum sentences for armed robbery. In this case the defendant was convicted of two armed robberies and sentenced to twenty and twenty-five years to run consecutively. The two armed robberies were not based on the same act or transaction nor did they constitute parts of a common scheme or plan. Therefore, concurrent *676 sentences were not statutorily required. La. Code Crim.P. art. 883; State v. Pruitt, 474 So.2d 491 (La.App. 4 Cir.1985). The sentencing judge, when he imposed a total of 45 years, evidently adverted to the progressively serious nature of the defendant's criminal conduct: as an insider the defendant helped plan the first robbery, provided the gun for it, and staged it; he drove the get-away vehicle for the second robbery. He absented himself from his trial. We cannot say in this case that consecutive sentences totaling 45 years for two armed robberies is constitutionally excessive.
The conviction and sentences are affirmed.
AFFIRMED.