# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-1414

STATE OF LOUISIANA

VERSUS

ROBERT L. DOTSON

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 02-K-4565-A
HONORABLE JAMES T. GENOVESE, DISTRICT JUDGE

**********

## ULYSSES GENE THIBODEAUX
### CHIEF JUDGE
**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and Marc T. Amy, Judges.

**AMY, J., DISSENTS IN PART AND WOULD AFFIRM BOTH CONVICTIONS.**

> **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR RESENTENCING ON COUNT I.**

G. Paul Marx
P. O. Box 82389
Lafayette, LA 70598-2389
Telephone: (337) 237-2537
COUNSEL FOR:
    Defendant/Appellant - Robert L. Dotson

Earl B. Taylor
District Attorney - St. Landry Parish
Alisa Ardoin Gothreaux
Assistant District Attorney
P. O. Drawer 1968
Opelousas, LA 70571-1968
Telephone: (337) 948-0551
COUNSEL FOR:
    Plaintiff/Appellee - State of Louisiana

**Robert L. Dotson**
**Basile Detention Center**
**3843 East Stagg Avenue**
**Basile, LA 70515**

THIBODEAUX, Chief Judge.

The Defendant, Robert L. Dotson, appeals his conviction for two counts of first degree robbery. He contends the evidence was too circumstantial and insufficient to support the convictions and the trial court erred in refusing to give the jury a special charge regarding accessory after the fact. The Defendant further implores us to reverse his conviction on Count II because there was only one robbery victim.

For the following reasons, we reverse the Defendant's conviction on the robbery of Lakisha Alfred in Count II and remand to the trial court for resentencing on Count I, the robbery of Tammy Thomas.

**Insufficiency of the Evidence**

This is a case of circumstantial evidence. There is no physical evidence or witness identification to prove the Defendant was involved in the robbery. The Defendant's contention of evidentiary insufficiency is premised on his assertions that the State failed to prove his identity and presence at the scene of the crime and that the circumstantial evidence failed to show his participation in the robbery. He further contends that only one of the store clerks was robbed, his second conviction is invalid.

This court has explained the insufficiency analysis as follows:

> In considering questions of sufficiency of the evidence, a reviewing court must consider the evidence presented in the light most favorable to the prosecution and consider whether a rational trier of fact could have concluded that the essential elements of the offense were proven beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The reviewing court defers to rational credibility and evidentiary determinations of the trier of fact. *State v. Marcantel*, 00-1629 (La. 4/3/02), 815 So.2d 50.

1

*State v. Chesson*, 03-606, p. 5 (La.App. 3 Cir. 10/1/03), 856 So.2d 166, 172, *writ denied*, 03-2913 (La. 2/13/04), 867 So.2d 686.

Further, when the conviction is based upon circumstantial evidence, La.R.S. 15:438 provides that such evidence must exclude every reasonable hypothesis of innocence. *State v. Camp*, 446 So.2d 1207 (La.1984); *State v. Wright*, 445 So.2d 1198 (La.1984). However, La.R.S. 15:438 does not establish a stricter standard of review on appeal than the rational juror's reasonable doubt standard. The statute serves as a guide for the jury when considering circumstantial evidence. On appeal, the issue is whether a rational trier of fact, when viewing the evidence in a light most favorable to the prosecution, could find that all reasonable hypotheses of innocence were excluded.

At trial, Tammy Thomas testified that on October 25, 2002, she and Lakisha Alfred were working at the Morrow Junction convenience store on Highway 71 when they were robbed at 6:12 p.m. Thomas testified that a man ran into the store, pointed a shotgun in her face, and told her to give him all the money. She was standing behind the register, and Alfred was standing a few feet to her left and within arms' reach at the time. Thomas told the man not to shoot her, put in her security code, and opened the cash register drawer. The man reached over the counter and took the cash, later determined to be around two hundred and fifty dollars. Thomas testified the man ran out of the store and got into the passenger side of a white Buick that was backed up to the front door of the store. The Buick's license plate was in the back window on the left side. She could not see a driver, but stated that the car was driven away. Thomas testified that the getaway car turned left on Highway 71. Thomas testified that a few seconds after the robbery John Mouton came to the store.

2

Thomas described the armed robber as a man wearing a "doo-rag" and dark colored sweats. Thomas was later shown a photographic lineup and identified the armed robber. She testified that he had changed the clothes he had been wearing during the robbery. Thomas also identified Albert Pugh as the armed robber in open court.

Lakisha Alfred testified that the robber was a tall, black male with a long gun. She stated the robber pointed the gun in Thomas's face but did not point it at her. On cross-examination, Alfred stated that when the robbery occurred she was standing near Thomas and was holding papers in her hand. Thomas explained that they were preparing to close the store at 6:30 p.m. Alfred's description of the robbery corroborated the testimony of Thomas. She also identified Pugh in open court as the armed robber. Alfred testified that she did not see the Defendant in the getaway car. She stated she immediately reported the robbery to the Bunkie Police Department and then to the St. Landry Parish Sheriff's Department. Both Thomas and Alfred identified the white Buick as the one depicted in the photograph received into evidence as S-1.

Lou Ann Rhines testified that she saw a man walking into the store with the end of a gun barrel by his ankle. She never went into the store, got back into her car and drove away. Rhines denied telling Detective Willis that she did not see a gun. The witness's voluntary statement was received into evidence as D-2. The statement stated that she saw two men sitting in a white car and that one man got out to go into the store. Rhines stated she did not see a gun. At trial, Rhines explained that she never saw the whole gun, but only saw the end of the barrel. She testified that she told Deputy Willis that she saw the barrel. Thomas testified that she did not

3

remember anyone coming into the store just before the robbery. She stated that Lou Ann Rhines did not come to the store that day.

John Mouton testified that he was walking toward the Morrow Junction convenience store around 6:00 p.m. on the night in question when he noticed a white car in the parking lot. He did not notice if there was a temporary tag in the windshield of the car. Mouton testified that as he was walking into the parking lot, someone in the white car yelled at him twice not to go into the store. He stated he could see only the silhouette of a person in the driver's seat of the car. Mouton testified that he saw a black male run out of the store with something long in his hand. He stated it looked like a stick and was about thirty inches long. Mouton testified the man jumped into the passenger side of the vehicle and it drove away. He could not identify the Defendant as the driver of the car, nor could he identify the armed robber. Mouton testified that there was no other car in the store parking lot.

Tiffany Brown testified that the white Buick the Defendant was driving was her car. She identified the bill of sale, temporary license tag, and registration form for her car. Brown testified that the Defendant was her boyfriend and that she lent him her car on the date in question at about 3:00 p.m. in Alexandria. The Defendant told her he was going to his cousin's house in Lecompte to get some money and would be back in a few minutes. He never returned. Brown testified that she had never heard the name of Albert Pugh.

Anthony St. Romain, a former Cottonport Police officer, testified that on the date in question he had received a "be on the lookout" call describing a white car with a temporary license tag and two black male occupants. He stated that he saw the vehicle depicted in the evidence photo at a red light in Cottonport at about 6:45 p.m. Officer St. Romain testified that there were two black male occupants and that he and

4

his partner, Rickey Powell, stopped the vehicle. The two men were arrested. Both officers identified the Defendant as the driver of the vehicle and Pugh as the passenger. No weapons were found in the vehicle. The Defendant was searched and had a roll of money in his pocket. Officer Powell testified that the Defendant did not resist the officers or attempt to run away. Officer St. Romain testified that it takes about thirty minutes to drive from Morrow to Cottonport.

St. Landry Parish Sheriff's Deputy Robert Willis stated that he arrived at the scene of the arrest in Cottonport and searched the white Buick. Deputy Willis recorded the evidence seized by the Cottonport officers, including the cash found on the suspects. He testified that Pugh had one hundred and twenty-one dollars consisting of one hundred dollars in twenties, fifteen dollars in fives, and six dollars in ones. The Defendant had one hundred and twelve dollars consisting of forty dollars in twenties, thirty dollars in tens, thirty-five dollars in fives, and seven dollars in ones. There was also ten dollars in the vehicle's console.

Deputy Willis testified there was a running suit hanging on a hangar in the back seat. He stated the victims identified Pugh as the armed robber when they saw him at the police station the night of the robbery. Deputy Willis testified the two women stated that Pugh had changed clothes and had been wearing a black jacket. He showed the jacket from the running suit to the women who identified it as the one the robber had worn. Deputy Willis stated that he provided a photo lineup to Thomas and Alfred and that they had no difficulty identifying Pugh as the armed robber. Deputy Willis testified that he did not investigate the scene of the robbery or obtain any register receipts to verify the amount of money taken.

St. Landry Parish Sheriff's Deputy Ronnie Janice stated that he was dispatched to the scene of the robbery. He testified that the two clerks gave him the

5

license plate number of the getaway car and that the suspects were arrested in Cottonport. Thomas testified that she did not give the police a license plate number for the getaway car.

Demetricus Deloach testified for the defense. He stated he is related to the Defendant. Deloach testified that he saw the Defendant on the date in question in the early evening and gave him about forty or fifty dollars. He did not know what time he saw the Defendant at his home in Lecompte.

The Defendant argues that the only evidence that links him to the robbery is the testimony of Tiffany Brown that she lent her white Buick to him and the fact that he was found driving the car with Pugh forty minutes after the robbery. No weapon was found in the vehicle, and the cash found on the Defendant and Pugh was not linked to the convenience store. The Defendant contends the circumstantial evidence failed to prove that he was driving Pugh during the robbery. The Defendant further states that the jury's responsive verdict indicated that they did not feel the State proved his identification as the getaway car driver.

The Defendant was found guilty of two counts of first degree robbery. Louisiana Revised Statutes 14:64.1(A) provides:

> First degree robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon.

Louisiana Revised Statutes 14:24 provides:

> All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.

6

Several courts have found that a defendant who drives the getaway car is a principal. *State v. Tate*, 95-1152 (La.App. 3 Cir. 3/6/96), 670 So.2d 671; *State v. Baum*, 533 So.2d 110 (La.App. 4 Cir. 1988).

Therefore, in order to convict the Defendant of two counts of first degree robbery, the State had to prove beyond a reasonable doubt that the Defendant was concerned in the commission of the robbery and that his accomplice took something of value from the control of both the store clerks by leading the victims to believe he was armed with a dangerous weapon.

The evidence at trial established the Defendant's girlfriend lent him her white Buick at about 3:00 p.m. and he drove to his cousin's house in Lecompte to get some money on the afternoon of the robbery. Eyewitness Rhines testified that she saw two men sitting in a white car when one man went into the store with a gun. Eyewitness Mouton testified that a black male in a white car yelled at him not to go into the store, just before he saw another black male run from the store and get into the car. The victims testified that Pugh robbed the convenience store. None of the witnesses could identify the driver of the getaway car. Later, the Defendant was seen driving the same white Buick identified as the getaway car in the robbery. The robbery occurred in Morrow at 6:12 p.m. The Defendant and his passenger, Pugh, were arrested in Cottonport at 6:45 p.m. Two witnesses testified that it would take about thirty minutes to drive from Morrow to Cottonport. Although no weapon was found, both men had the equivalent of almost two hundred and fifty dollars in cash bills on them. The clerk reported that two hundred and fifty dollars was taken from the store. The circumstantial evidence presented at trial is sufficient to exclude every reasonable hypothesis of innocence.

7

The Defendant also argues that only one of the store clerks was robbed. Therefore, his second conviction is illegal. For authority for his position, he cites *State v. Young*, 00-1437 (La. 11/28/01), 800 So.2d 847. In *Young*, the defendant's conviction for attempted simple robbery was reversed because there was no evidence that he attempted to take anything from the store owner or the store. After the store owner fought off the defendant, the defendant fled the store. The court held that the state failed to prove the defendant had the intent to take anything. This case is distinguishable in that the robber did take money from the cash register in front of the two clerks.

This court found the state failed to prove both counts of armed robbery of bank tellers in *State v. Valrie*, 99-226 (La.App. 3 Cir. 10/13/99), 749 So.2d 11, *writ denied*, 99-3236 (La. 4/20/00), 760 So.2d 343. In *Valrie*, an armed robber entered a bank and ordered the first teller down to the floor and told the second teller to open her money drawer. The robber took money from the second teller's drawer. This court held that the state failed to prove the defendant took anything of value from the first clerk's person or from her immediate control, and, therefore, one count of armed robbery was reversed.

In this case, the trial testimony revealed that the robber pointed a shotgun at Thomas and told her to give him the money. She entered her code into the register and opened the drawer. The robber reached over the counter and took the money from the register. The second clerk, Alfred, was standing next to her and the cash register at the time, but none of the robber's actions were directed toward her and no evidence was introduced to show that Alfred was in the immediate control of the cash register at the time of the robbery. The State failed to prove that the robber took

8

anything of value from the person of or in the immediate control of Alfred. We, therefore, reverse this conviction.

**Refusal to Give Special Jury Charge**

The Defendant argues the trial court erred in failing to give a jury charge regarding the lesser offense of accessory after the fact. The Defendant was not charged with accessory after the fact, a violation of La.R.S. 14:25, nor is accessory after the fact a responsive verdict to armed robbery. *See* La.Code Crim.P. art. 814(A)(22). Hence, there is no error in the trial court's refusal to provide the jury with the requested instruction. *See State v. Womack-Grey*, 99-0416 (La.App. 4 Cir. 2/6/02), 809 So.2d 1166, *writ denied*, 02-695 (La. 11/22/02), 829 So.2d 1035; *State v. Fish*, 00-922 (La.App. 5 Cir. 1/31/01), 782 So.2d 1087, *writ denied*, 01-548 (La. 2/1/02), 808 So.2d 337.

## CONCLUSION

The Defendant's conviction for armed robbery of Lakisha Alfred, Count II, is reversed. The Defendant's conviction for armed robbery of Tammy Thomas, Count I, is affirmed. This case is remanded for the imposition of a determinate sentence on Count I, taking into consideration the mandatory restrictions on parole, probation, and suspension of sentence provided for in La.R.S. 14:64.1.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR RESENTENCING ON COUNT I.**