STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 13-1234


STATE OF LOUISIANA

VERSUS

WILLIE JAMES ROBERTSON


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR 137262
HONORABLE GLENNON P. EVERETT, DISTRICT JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of Jimmie C. Peters, Billy Howard Ezell, and Phyllis M. Keaty, Judges.


**CONVICTION REVERSED; SENTENCE VACATED; ORDER OF ACQUITTAL ENTERED.**


**Michael Harson**
**District Attorney**
**Fifteenth Judicial District Court**
**Roger P. Hamilton, Jr.**
**Assistant District Attorney**
**P.O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
        **State of Louisiana**

**Edward John Marquet**
**Louisiana Appellate Project**
**Post Office Box 53733**
**Lafayette, LA 70505-3733**
**(337) 237-6841**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Willie James Robertson**

**EZELL, Judge.**

Defendant, Willie James Robertson, was indicted in 2012 for the October 6, 1999, second degree murder of Irene Schoops. A jury trial commenced on May 29, 2013, and on May 30, the jury found Defendant guilty of manslaughter, a violation of La.R.S. 14:31. Defendant was then sentenced on September 26, 2013, to forty years imprisonment without the benefit of parole, probation, or suspension of sentence but with credit for time served.

Defendant has perfected a timely appeal wherein he alleges the evidence failed to support a conviction for manslaughter or second degree murder. For the following reasons, we reverse Defendant's conviction, vacate his sentence, and enter an order of acquittal.

## FACTS

Prior to the start of testimony, the State submitted into evidence the victim's death certificate and the autopsy report. According to the autopsy report, the apparent cause of death was "sudden cardiac arrest," at approximately 4:30 p.m. on October 6, 1999.

Denise Breaux, the victim's granddaughter, testified first at trial. She explained that the victim worked with her mother, Karen Cordova, in a law office. On October 6, 1999, the victim left work about 4:00 p.m. She was driven home by one of the office workers. She went to the grocery store close to her house and picked up some groceries.[1] Ms. Breaux testified she saw the victim the day before, on October 5, 1999, and on the morning of October 7, 1999. She called the victim, but she did not answer the phone. Ms. Breaux called several times throughout the

---

[1] This information apparently came from Mrs. Cordova, Ms. Breaux's mother, who died a few years later.

morning, and then called her mother at work to see if she knew the whereabouts of the victim. They decided to check on her at the house.

Ms. Breaux testified that her mother arrived first. Ms. Breaux subsequently let herself in with a key at the side door. She saw the victim lying on the floor in the kitchen with the plastic grocery bags by her outstretched hand. She stated that the back sliding double door was pushed in. After the police arrived, she and her mother found that the house had been burglarized. The VCR and the victim's silverware were missing. She also noticed that the victim's wedding ring was not on her hand as it always was. She stated that the curtains in the living room were pulled shut, which was not customary. It was also noted that some of the groceries Ms. Schoops had purchased were missing from the plastic bags.

Chris Cogburn, a detective with the Lafayette Parish Sheriff's Office, was one of the original officers to process the crime scene. He took the photographs. He noted that on the back porch close to the pushed-in double door was a collection of gardening tools, including a screw driver. He also collected fingerprints. He testified that he located a blue metal security box in the living room from which he was able to lift a latent print. There was testimony that seventy-nine latent fingerprints were collected altogether. There were no prints found on any of the gardening tools located outside the pushed-in sliding door or the screw driver. He testified that he made comparisons and none of the prints matched Defendant's.[2]

Detective Philip Buris, an officer with the Lafayette Police Department, testified that the investigation was suspended in 2002. However, in 2011, he asked

_____

[2] There was no explanation given as to why Defendant was a suspect at the time of the offense.

a crime scene technician to reprocess the fingerprints through the Automated Fingerprint Identification System [AFIS], and among other prints, Defendant's prints were highlighted. After he inquired and learned that no one in the victim's family knew Defendant, he obtained an arrest warrant.

Detective Scott Broussard, a crime scene investigator with the Lafayette Police Department, and Detective Dwayne Angelle, an officer with the Lafayette Parish Sheriff's Office assigned to the Metro Crime Scene Unit, were both qualified at trial as experts in fingerprint analysis. They both examined the latent print discovered on the blue security box and compared the fingerprint to Defendant's prints and determined that the print on the box indeed was Defendant's. Detective Broussard testified that two of the prints found on the "point of entry" were also Defendant's prints.

Defendant was subsequently charged with second degree murder.

## ASSIGNMENT OF ERROR

Defendant argues that there was no evidence connecting him with the victim's death. The only evidence submitted were Defendant's alleged fingerprints, found in the house along with seventy-nine other fingerprints. The victim was not found until the next day, more than eighteen hours after the estimated time of death. There was no DNA processed. Defendant submits the evidence was insufficient pursuant to *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979), and that all reasonable hypotheses of innocence were not eliminated beyond a reasonable doubt as required when the conviction was based primarily on circumstantial evidence.

In *State v. Dotson*, 04-1414, pp. 1-2 (La.App. 3 Cir. 3/2/05), 896 So.2d 310, 312, this court has explained the insufficiency analysis as follows:

> In considering questions of sufficiency of the evidence, a reviewing court must consider the evidence presented in the light most favorable to the prosecution and consider whether a rational trier of fact could have concluded that the essential elements of the offense were proven beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The reviewing court defers to rational credibility and evidentiary determinations of the trier of fact. *State v. Marcantel*, 00-1629 (La.4/3/02), 815 So.2d 50.

*State v. Chesson*, 03-606, p. 5 (La.App. 3 Cir. 10/1/03), 856 So.2d 166, 172, *writ denied*, 03-2913 (La.2/13/04), 867 So.2d 686.

Further, when the conviction is based upon circumstantial evidence, La.R.S. 15:438 provides that such evidence must exclude every reasonable hypothesis of innocence. *State v. Camp*, 446 So.2d 1207 (La.1984); *State v. Wright,* 445 So.2d 1198 (La.1984). However, La.R.S. 15:438 does not establish a stricter standard of review on appeal than the rational juror's reasonable doubt standard. The statute serves as a guide for the jury when considering circumstantial evidence. On appeal, the issue is whether a rational trier of fact, when viewing the evidence in a light most favorable to the prosecution, could find that all reasonable hypotheses of innocence were excluded.

Defendant was initially charged with second degree murder. Second degree murder at the time of the offense was defined, in pertinent part, as follows:

A. Second degree murder is the killing of a human being:

(1) When the offender has a specific intent to kill or to inflict great bodily harm; or

(2)(a) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, forcible rape, aggravated arson, aggravated burglary, aggravated kidnapping, second degree kidnapping, aggravated escape, drive-by shooting, armed robbery, first degree robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.

La.R.S. 14:30.1.

In the current case, we find that the evidence was not sufficient to support a verdict of second degree murder. This crime requires proof of a specific intent to either kill the victim or to inflict serious bodily harm or that the person who

4

burglarized the victim's home was armed with a dangerous weapon. From the position of the body, it appeared as if the victim had just arrived at her house with the grocery bags still in hand. There was no evidence of a dangerous weapon or that anyone inflicted any trauma on the victim. There was no evidence of rape or any of the other enumerated offenses as listed in Section (2)(a) of La.R.S. 14:30.1(A). There was no evidence of when the burglar entered the house. The evidence given to the jury indicated conclusively that the victim died of natural causes. The autopsy report listed the cause of death as "possible acute left ventricular arrhythmia, in subject with severe, up to 70% stenosing left anterior descending/right coronary atheromatosis."

As noted above, however, Defendant was convicted of the responsive verdict of manslaughter. The verdict reflects the jury's right to compromise between the verdicts of guilty of second degree murder and not guilty. A jury may return any legislatively provided responsive verdict, as long as the evidence was sufficient to support a conviction of the charged offense. *State ex rel. Elaire v. Blackburn,* 424 So.2d 246 (La.1982), *cert. denied*, 461 U.S. 959, 103 S.Ct. 2432 (1983); *State v. Sepulvado*, 10-435 (La.App. 3 Cir. 3/9/11) 59 So.3d 463, *writ denied*, 11-1151 (La. 11/14/11), 75 So.3d 941.

The manslaughter statute at the time of the offense, in pertinent part, provided:

A. Manslaughter is:

(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood

5

had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or

(2) A homicide committed, without any intent to cause death or great bodily harm.

(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person[.]

La.R.S. 14:31.

While the evidence may very well establish beyond a reasonable doubt that Defendant burglarized the victim's residence, we find that the evidence was not sufficient to sustain the charged offense of second degree murder or the responsive verdict of manslaughter.[3] There was no information submitted to the jury regarding Defendant's whereabouts during that time period between the victim's death and her discovery. There was approximately eighteen hours between the time of her death and when she was discovered the next day. It was speculated that the burglary was in commission at the time of the victim's arrival since groceries were missing from the plastic bags, and her wedding ring was gone from her finger. However, the State failed to eliminate beyond a reasonable doubt the very real possibility that the victim was already deceased when the burglary commenced. The burglar could have entered the house late afternoon, evening time, during the night, or early the next morning and availed himself of the opportunity to take whatever he wanted including groceries and the victim's wedding ring.

Every person charged with a crime is presumed innocent until proven guilty and is entitled to a speedy, public, and impartial trial. La. Const. art. I, § 16. The principle that there is a presumption of innocence in favor of the accused is the undoubted law axiomatic and elementary; and its enforcement lies at the foundation of the

_____

[3] At the time of the offense in 1999, the only responsive verdicts to second degree murder were manslaughter and not guilty. La.Code Crim.P. art. 814(A)(3).

6

administration of our criminal law. *Coffin v. United States*, 156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481 (1895). The presumption of innocence is a "conclusion drawn by the law" by which a defendant must be acquitted unless proven to be guilty. *Id.*

*State v. Hopkins,* 39,730, pp. 9-10 (La.App. 2 Cir. 8/17/05), 908 So.2d 1265, 1273-74, *writ denied*, 05-2253 (La. 3/17/06), 925 So.2d 541. Accordingly, because the evidence is constitutionally insufficient to support Defendant's conviction for second degree murder or manslaughter, we reverse the conviction for manslaughter, vacate the sentence, and enter a judgment of acquittal.

**CONVICTION REVERSED; SENTENCE VACATED; ORDER OF ACQUITTAL ENTERED.**