# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-188


**STATE OF LOUISIANA**

**VERSUS**

**ROBERT E. SMITH**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 184927
HONORABLE WILLIAM BENNETT, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**SHANNON J. GREMILLION**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Shannon J. Gremillion, and D. Kent Savoie, Judges.


**CONVICTION AND SENTENCE AFFIRMED.**

**Hon. Charles A. Riddle, III**
**Twelfth Judicial District Attorney**
**P. O. Box 1200**
**Marksville, LA 71351**
**(318) 253-6587**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Jonathan Terrel Gaspard**
**Assistant District Attorney**
**P. O. Box 546**
**Marksville, LA 71351**
**(318) 240-7329**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Adam Huddleston**
**Huddleston Law, L.L.C.**
**500 Main Street**
**Pineville, LA 71360**
**(318) 787-0885**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Robert E. Smith**

**GREMILLION, Judge.**

Defendant, Robert E. Smith, appeals the denial of his motion to reconsider his sentence for, and the sufficiency of the evidence to support his conviction of, cruelty to persons with infirmities, a violation of La.R.S. 14:93.3. For the reasons that follow, we affirm the sentence and conviction.

## FACTS

Defendant was charged by a bill of information with one count of cruelty to persons with infirmities. A jury trial commenced on July 7, 2015. Defendant was found guilty as charged. Defendant filed a "Motion for Judgment of Acquittal or, in the Alternative, Motion for New Trial." The motion was heard on August 11, 2015. Following arguments, the trial court denied the motion in open court. After waving all delays, Defendant was sentenced on the same date to one year imprisonment, without benefit of parole, probation, or suspension of sentence. On September 2, 2015, Defendant filed a "Motion to Reconsider Sentence" and a "Memorandum in Support of Motion to Reconsider Sentence." The motion was heard on October 13, 2015. Following testimony and arguments, the trial court took the matter under advisement. On November 18, 2015, the trial court denied the motion with written reasons.

Defendant has perfected a timely appeal, wherein he alleges two assignments of error: 1) The trial court erred when it denied his motion to reconsider the sentence; and 2) The evidence was insufficient to support the conviction.

On December 15, 2014, Defendant, who was forty-nine years old at the time, and the victim, George Barbin, who was seventy-four years old, had a physical

altercation in front of Mr. Barbin's house. During the altercation, Mr. Barbin received cuts to his face and arm.

George Barbin lived in Marksville with his girlfriend, Joan Hines. Ms. Hines is the cousin of Defendant and his younger brother, Anthony "Tony" Smith, who was the object of contention between Mr. Barbin and Defendant. Mr. Barbin explained that Tony, who had been living in Melville, had moved in with Mr. Barbin and Ms. Hines a short time before the incident. Tony Smith had some disabilities and required assistance dealing with everyday living.

Mr. Barbin testified that three days prior to the confrontation, Defendant called Tony, spoke with him a while, then asked to speak with Mr. Barbin. Mr. Barbin stated that after he explained to Defendant that Tony had come to them and asked to move in, Defendant called him an obscene name and asked him how many birthdays he had left. Mr. Barbin stated that he took that remark as a threat. Three days later, on December 15, 2014, Mr. Barbin, while outside in the back of his house, heard "banging on the front door [that sounded] like he was trying to knock it down." He walked around to the front door and saw it was Defendant. He said he asked "what the hell you doing here Robert[?]" Mr. Barbin said Defendant yelled that "I came here to see my brother," and then he "sucker" punched him.

> And when he hit me I spun around and he jumped on my back and put me like in a bear hug and then he ran his legs in front of me and tripped me, which I fell face down and from there he got on my back and started commencing to beating me in the head. And when he wasn't doing that he was beating me in the ribs. If he didn't hit me 20 times in the head with his fist, he didn't hit me once.

Mr. Barbin claimed Defendant tried to kill him and would have if Ms. Hines and Tony had not pulled him off. An ambulance arrived and took him to the hospital where he had x-rays of his head and ribs and received five stitches above

his eye. Mr. Barbin testified that because he had had open heart and aneurysm surgery, along with COPD, he was disorientated for a few days following the incident, but he was all right. However, he had sore ribs for a couple of weeks following the incident. Mr. Barbin denied that he attempted to hit Defendant first. He stated there was a video to prove that Defendant attacked him first. He stated he had no weapon on him, but, if he had known that Defendant was coming, he would have armed himself with a gun.

Defendant testified that he was living in Melville at the time. He stated that after their mother died five years ago, he took Tony in to take care of him. He bought him a one-bedroom FEMA trailer. He explained that when Tony did not call him on the Friday before the incident with Mr. Barbin, Defendant became concerned and called Tony but could not reach him all weekend. On Monday, he went to Tony's employment and learned that he took the day off to go to the Social Security office in order to change the name of the recipient on his social security check. Defendant testified that he spoke with his lawyer and was advised to go to Ms. Hines' house and speak with his brother personally. As Defendant was knocking on the front door, Mr. Barbin came around the corner with a metal watering can in his hand and demanded to know what was he doing there. When Defendant told him he wanted to see his brother, Mr. Barbin swung at him with the watering can. Defendant said he ducked and shoved Mr. Barbin into the side of the house. After Mr. Barbin fell to the ground, he continued to swing the watering can at Defendant. When asked if he felt threatened, Defendant answered:

> He was going to beat me down. That's what I thought, I was going to get beat down. If he would have made that contact, he was an ex-correctional officer. He's used to handling people like me. First thing he was going to do was beat me down. He even told ya'll that, he was going to beat me down.

3

Defendant testified that the "video" Mr. Barbin referred to was taken from Defendant's phone. Defendant stated that he struck Mr. Barbin seven times and agreed that on the video, he could be heard asking Mr. Barbin "how much more can you take?" Defendant admitted that when he called his brother a few days before the confrontation and spoke with Mr. Barbin, he asked Mr. Barbin how many Christmases he had left. He explained that he asked Mr. Barbin and Ms. Hines what their intentions were regarding his brother, since Mr. Barbin was seventy-four, and neither he nor Ms. Hines were in good health themselves. He stated he had no animosity towards the couple other than concern for his brother, whom he loved very much.

Joan Hines testified that when Defendant called his brother a few days prior to the fight, she heard him tell Mr. Barbin that "this would be his last birthday." She said Defendant banged on the door. She opened the door just as Mr. Barbin came around the corner. She stated that Defendant commenced repeatedly hitting Mr. Barbin, even after he was on the ground. She said that after she pulled him off Mr. Barbin, Defendant shoved her and said "I ought to just kill you."

As noted, the video was taken with Defendant's own phone. A careful review of the video showed Defendant getting out of his truck and speaking into the phone. He stated that he had arrived at Ms. Hines' house, and that he was going to be non-aggressive. He approached the house and rapped three times on the front door. Mr. Barbin can be seen approaching along the side of the house and a metal watering can be seen sitting on the ground at the corner of the house by the front door.

As noted in Defendant's brief, a short conversation ensued prior to the physical confrontation:

Mr. Smith: Where's Tony?

Mr. Barbin: What are you doing here?

Mr. Smith: I came to see my little brother.

Mr. Barbin: I can [inaudible] you.

Nothing can be discerned from the video after this point. As the fight commenced, the phone dropped to the ground. The sound of something hitting something else approximately five times can be heard, along with barking dogs and scuffling sounds. As noted by the trial court, Defendant asked Mr. Barbin, "[H]ow much can you take George?" and "[Y]ou want some more George?" Ms. Hines can be heard calling the police. Mr. Barbin told Defendant to get off of him. Defendant said he knew he was going to jail. A vehicle's motor started, and then a male voice pointed out the phone on the lawn. Mr. Barbin can be heard saying, "Well, it's mine now." The video did not record Defendant telling Ms. Hines that he ought to kill her.

## ANALYSIS

We will address Defendant's second assignment of error first, as, if the evidence was insufficient to support his conviction, his first assignment of error would be rendered moot.

In pertinent part, La.R.S. 14:93.3 provides:

> A. Cruelty to persons with infirmities is the intentional or criminally negligent mistreatment or neglect by any person, including a caregiver, whereby unjustifiable pain, malnourishment, or suffering is caused to a person with an infirmity, an adult with a disability, or a person who is aged, including but not limited to a person who is a resident of a nursing home, facility for persons with intellectual disabilities, mental health facility, hospital, or other residential facility.

> B. "Caregiver" is defined as any person or persons who temporarily or permanently is responsible for the care of a person with

5

an infirmity; an adult with a physical or mental disability; or a person who is aged, whether such care is voluntarily assumed or is assigned. Caregiver includes but is not limited to adult children, parents, relatives, neighbors, daycare institutions and facilities, adult congregate living facilities, and nursing homes which or who have voluntarily assumed or been assigned the care of a person who is aged, a person with an infirmity, or an adult with a disability; or have assumed voluntary residence with a person who is aged, a person with an infirmity, or an adult with a disability.

C. For the purposes of this Section, a person who is aged is any individual sixty years of age or older.

While agreeing that Mr. Barbin was seventy-four at the time of the incident and, thus, "a person who is aged" pursuant to the statute, Defendant argues that Mr. Barbin was the aggressor, attacking Defendant with a metal watering can. Defendant contends he was simply defending himself and is not guilty of cruelty to the infirmed.

In *State v. Dotson,* 04-1414, p. 1 (La.App. 3 Cir. 3/2/05), 896 So.2d 310, 312, (quoting *State v. Chesson*, 03-606, p. 5 (La.App. 3 Cir. 10/1/03), 856 So.2d 166, 174, *writ denied*, 03-2913 (La. 2/13/04), 867 So.2d 686), this court has explained the insufficiency analysis as follows:

> In considering questions of sufficiency of the evidence, a reviewing court must consider the evidence presented in the light most favorable to the prosecution and consider whether a rational trier of fact could have concluded that the essential elements of the offense were proven beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The reviewing court defers to rational credibility and evidentiary determinations of the trier of fact. *State v. Marcantel*, 00-1629 (La.4/3/02), 815 So.2d 50.

The essence of Defendant's argument is that the evidence did not demonstrate that the pain inflicted upon Mr. Barbin was unjustified, as Mr. Barbin was the aggressor. Defendant cites La.R.S. 14:19(A)(1)(a), which provides in pertinent part: "The use of force or violence upon the person of another is

justifiable . . . .[w]hen committed for the purpose of preventing a forcible offense against the person[.]" Defendant argues, accordingly, the State failed to refute or disprove the reasonable hypothesis of innocence that he was attempting, all along, to stop Mr. Barbin from hitting him. In denying the motion for acquittal filed by Defendant, the trial court stated:

> Mr. Barbin did in fact as Mr. Guillot said earlier confirm he was not scared. Mr. Barbin testified that when he first saw Smith he said what the hell you doing here. And Barbin testified if he would [have] known that Smith was coming he would have armed himself.

> Now these above facts listed indicates [sic] that at the point that Mr. Barbin tripped to the ground this had been a simple fight. Whether or not he had a metal bucket in his hand or whether or not he swung the bucket at Mr. Smith does not matter – up until that point it mattered, but once he was tripped and fell to the ground, that's when Mr. Smith jumped on him and hit him at least 20 times, multiple times saying how much can you take George, how much can you take George, you want some more George, you want some more George.

> So after the point that that – up to the point that the trip occurred, it's a simple fight. If there was a claim of self-defense with the metal bucket if he swung the bucket fine, that was a fight. But once he was tripped and fell to the ground and Mr. Smith jumped on him and beat him and beat him, that's where the crime occurred. It was a second degree battery, it was cruelty to the infirmed as it clearly meets the statute.

In this case, even if the cuts were a result of Mr. Barbin falling down, the fact that during the tussle he fell onto sharp rocks did not take the injuries out of the province of Defendant's actions. In *State v. Mitchell,* 49,713, (La.App. 2 Cir. 4/15/15), 163 So.3d 858, *writ denied,* 15-1032 (La. 5/20/16) 191 So.3d 1064, the defendant, convicted of cruelty to the infirmed, asserted that there was insufficient evidence to establish pain and suffering to the mentally retarded victim he raped. Noting that the evidence was sufficient, the second circuit stated:

> However, whether or not such pain or suffering was actually proven is not relevant to whether the evidence supports a conviction for cruelty to persons with infirmities. The evidence need only be sufficient to

7

prove that the defendant actively desired to cause the proscribed criminal consequences to follow his act and that he committed the act for the purpose and tending directly toward the accomplishing of that object. See, *State v. Browhow,* [41,686 (La.App.2d Cir. 12/13/06), 945 So.2d 890]. The reprehensible actions of the defendant established that he had a specific intent to mistreat G.S. Furthermore, his actions also sufficiently established his intent to cause the proscribed pain and suffering to her.

*Id.* at 868.

The jury heard all of the testimony and concluded Defendant was guilty of cruelty to an infirmed person. In *State v. Jackson*, 14-9, p. 4 (La.App. 3 Cir. 6/18/14), 146 So.3d 631, 634-35, *writ denied,* 14-1544 (La. 2/27/15), 159 So.3d 1066, this court noted:

It is well settled that the fact finder's role is to weigh the credibility of witnesses. *State v. Ryan,* 07-504 (La.App. 3 Cir. 11/7/07), 969 So.2d 1268. An appellate court should not second guess the credibility conclusions of the trier of fact, but rather, should defer to the rational credibility and evidentiary determinations of the jury. *Id.* The appellate court may impinge on the fact finder's discretion and its role in determining the credibility of witnesses "only to the extent necessary to guarantee the fundamental protection of due process of law." *State v. Mussall*, 523 So.2d 1305, 1310 (La.1988). As stated herein, upon viewing evidence in the light most favorable to the prosecution, the question for the appellate court is whether, on the evidence presented at trial, "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Strother*, 09-2357, p. 10 (La.10/22/10), 49 So.3d 372, 378 (quoting *Jackson* [*v. Virginia*]*,* 443 U.S. 307, 99 S.Ct. 2781 [1979]).

In those cases relying on circumstantial evidence, the fundamental principle of review means that when a jury "reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt." *State v. Captville*, 448 So.2d 676, 680 (La.1984).

We agree with the trial court that this occurrence was initiated by Mr. Barbin, and that the facts of the case demonstrate that Defendant's actions exceeded the level of force reasonable and apparently necessary to defend himself. La.R.S.

8

14:19. The evidence was sufficient in this case to sustain the conviction beyond a reasonable doubt.

Defendant was sentenced to one year imprisonment. He argues that the trial court erred when it denied his motion to reconsider the sentence. Defendant asserts that pursuant to *State v. Dorthey*, 623 So.2d 1276 (La.1993) and *State v. Berniard*, 03-484 (La.App. 5 Cir. 10/15/03), 860 So.2d 66, *writ denied*, 03-3210 (La. 3/26/04), 871 So.2d 345, his circumstances were exceptional, and he was entitled to a downward departure from the mandatory sentence. Defendant contends that even though the trial court agreed with him, the trial court erroneously based its decision not to grant the motion on La.Code Crim.P. art. 878, which provides that "[a] sentence shall not be set aside on the ground that it inflicts cruel or unusual punishment unless the statute under which it is imposed is found unconstitutional." Defendant does not contest the constitutionality of La.R.S. 14:93.3.

A trial court has discretion under La.R.S. 14:93.3 to sentence a defendant to no more than ten years in prison. La.R.S. 14:93.3(E). If the trial court finds, however, that the act of cruelty was intentional and malicious, it is mandated that the defendant be sentence to at least one year. The case law on cruelty to persons with infirmities sheds no light on the definition of "malicious" as used in the statute. Black's Law Dictionary defines a malicious act as "[a]n intentional, wrongful act done willfully or intentionally against another without legal justification or excuse." *Black's Law Dictionary*, 1101 (10th ed. 2014).

In the same vein as noted above in our discussion of Defendant's conviction, we agree with the trial court that Defendant's use of force exceeded that which was

9

legally justified. This constitutes "an intentional act . . . .without legal justification." In *Berniard*, the fifth circuit noted:

> In *State v. Fobbs*, 99-1024 (La.9/24/99), 744 So.2d 1274, 1275 the Louisiana Supreme Court held that the sentencing review under *State v. Dorthey*, 623 So.2d 1276, 1280 relative to downward departures from mandatory sentences in a habitual offender case is not limited to those sentences. In [*State v.*] *Brown*, [01-160 (La.App. 5 Cir. 5/30/01), 788 So.2d 667], a case involving aggravated kidnapping, we applied the principles set out in *Dorthey*, as reexamined in [*State v.*] *Johnson* [97-1906 (La. 3/4/98), 709 So.2d 672]. There we noted that downward departures from a mandatory minimum sentence should only occur in rare cases. *Brown,* 01-160 at 15, 788 So.2d at 675, citing *Johnson*, 97-1906 at 8, 709 So.2d at 677. In addition, we have held that the trial court may not depart from the mandatory minimum sentence because of some subjective impression about the defendant. *State v. Bell*, 97-1134, p. 17 (La.App. 5th Cir.2/25/98), 709 So.2d 921, 927, *writ denied*, 98-0792 (La.9/16/98), 721 So.2d 477.
>
> When a defendant seeks a downward deviation from the mandatory sentence, the defendant has the burden to rebut the presumption of constitutionality by showing by clear and convincing evidence that he is exceptional, namely, that he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the gravity of the offense, the culpability of the offender, and the circumstances of the case. *Brown*, 01-160 at 15, 788 So.2d at 675.

*Berniard, 860 So.2d* at 75.

We cannot conclude that the trial court erred in finding that Defendant failed to prove by clear and convincing evidence that his case is exceptional.

## DECREE

The conviction of Defendant, Robert E. Smith, is affirmed. The sentence of Defendant to one year imprisonment is likewise affirmed.

**CONVICTION AND SENTENCE AFFIRMED.**