LOLLEY, J.
11 This criminal appeal arises from the First Judicial District Court, Parish of Caddo, State of Louisiana. The defendant, Melvin Wayne Lubom, was convicted of aggravated rape, La. R.S. 14:42(A)(4), and sentenced to a term of life imprisonment without benefit of probation, parole or suspension of sentence. Lubom appeals his conviction and for the following reasons, we affirm.
Facts
In February 2004, eight-year-old M.L. was referred by her teacher to school-based social worker Orleace Aubrey because M.L. had a problem with feminine odor. During the process of taking a routine psycho-social history, Aubrey asked M.L. if she had ever been touched in a place that was uncomfortable or that made her feel uncomfortable. M.L. initially replied, “No.” However, after two or three follow-up visits during which Aubrey developed a rapport with M.L., the child disclosed that she was being touched by her father, the defendant. Using rag dolls, M.L. demonstrated to Aubrey where her father had touched her by putting the dolls into positions suggesting sexual contact, including one suggestive of rear-entry intercourse. M.L., who called her father “Daddy” and also by both of his names— Melvin and Wayne — told Aubrey that the activity had occurred as recently as within the past week. Aubrey alerted the authorities.
Beverly Paxon, an investigator with the Child Protection Services, the Louisiana Office of Community Support, and Detective Paula Vasquez (now Marino) interviewed Aubrey and M.L. at the school. Paxon testified at Lubom’s trial that M.L., who appeared nervous and scared, made no | ¡..disclosures at that time. After the initial interview with M.L., Paxon and Det. Marino went to the Lubom residence and *543 spoke to M.L.’s mother, Nicole Lubom. Nicole complied with their request to take M.L. and her older stepsister, S.R., to the Kara Center where they were examined by Dr. Ann Springer, whose positive findings of sexual abuse were reported to Det. Marino.
As part of the investigation, Det. Marino also interviewed Lubom, who denied ever molesting his daughter. Detective Marino testified that the defendant showed no surprise at the allegations of abuse and offered no explanation for M.L.’s accusations.
Subsequently, M.L. was brought to the Gingerbread House for two successive interviews. M.L. did not reveal any information during the first Gingerbread House interview, but afterwards, the parents were asked to remove all of the children from the home and place them with their maternal grandmother, Dorothy Harvey. The second Gingerbread House interview was conducted on March 3, 2004, by a Gingerbread House interviewer. Only M.L. and the interviewer were in the interview room, and Det. Marino was able to contact the interviewer electronically by ah earpiece so as to suggest questions. Nicole and Harvey were present at the Gingerbread House, but both stayed in the lobby during the interview. It was during this second interview that M.L. stated again that she had been abused by her father.
In April 2004, Lubom was indicted for the aggravated rape of M.L., who was born in May 1995, pursuant to La. R.S. 14:42(A)(4). Following |shis trial, a unanimous 12-person jury found Lubom guilty as charged. He filed motions of post verdict judgment of acquittal and new trial, which were denied. The trial court sentenced Lubom to serve a term of life imprisonment without benefit of probation, parole or suspension of sentence. This appeal ensued.
Discussion
Lubom brings two related assignments of error, first arguing that the trial court erred in finding the evidence sufficient to convict him of aggravated rape. We disagree.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 1995-1377 (La.02/28/96), 668 So.2d 1132. It is the role of the fact finder to weigh the respective credibility of the witnesses and, therefore, an appellate court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2d Cir.08/30/02), 827 So.2d 508, writ denied, 2002-3090 (La.11/14/03), 858 So.2d 422. In the absence of internal contradiction or irreconcilable conflict with other evidence, one witness’ testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App. 2d Cir. 105/08/96), 674 So.2d 1018, writ denied, 1996-1459 (La.11/15/96), 682 So.2d 760, writ denied, 1998-0282 (La.06/26/98), 719 So.2d 1048.
Louisiana R.S. 14:42(A)(4) provides that aggravated rape is where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed when the victim is under the age of 13 years. Here, the evidence adduced at trial was more than sufficient to support Lubom’s conviction of aggravated rape.
*544 At the trial, perhaps the most significant in the line-up of witnesses against Lubom was the victim, M.L., who was eleven years old at the time of trial and who appeared and testified against her father. From the witness stand, she identified Lubom as her father. Her second videotaped interview from the Gingerbread House was played for the jury. M.L. testified that her father did the things that she described in the videotaped interview, including putting his “privacy” inside her behind. M.L. testified that her father touched her in the wrong way. She admitted that she once put her parents’ sex toy on the outside of her behind, but denied ever putting it inside her body. On cross-examination, M.L. stated that she did not tell the truth during an interview at the defense attorney’s office when she said that no abuse occurred. She said she also did not tell the truth to the “lady detective” and Paxon when she said that nothing happened. Finally, M.L. stated that she did not tell the truth in the first videotaped interview when she said that nothing happened. She admitted that she had gotten mad at her father when he bought her twin siblings bicycles and did not buy her one; however, she denied that this made her so mad that she would make up |Bthese stories about him. On redirect examination, M.L. confirmed the truth of her statement that her father, the defendant, had penetrated her anally.[1]
Dr. Springer testified concerning her physical examination of M.L. and provided evidence concerning the physical trauma sustained by M.L. Dr. Springer, a clinical assistant professor of pediatric medicine and psychiatry at Louisiana State Medical Center in Shreveport, Louisiana, is also the medical director at the Kara Center, a medical facility designed for the diagnosis and treatment of all forms of child abuse. Dr. Springer was qualified by the court as an expert medical doctor in the field of pediatrics with a special expertise in child abuse medicine.
Significantly, Dr. Springer noted that M.L. had no hymen. She stated that at the time of the examination, there were fresh abrasions on the right and left of the entrance to the vagina, in her opinion obviously indicating a fairly recent injury. Dr. Springer explained that children tend to heal quickly (even within a few days), especially in these areas. Upon the anal exam, Dr. Springer documented stellate (star-shaped) deep Assuring (cracks/scarring) throughout the circumference of the anus and down through the mucosa to the muscle — the type of Assuring characteristic of children who have been anally penetrated. Dr. Springer explained that for such Assuring, the penetration would be forceful, violent and repeated. Dr. Springer’s diagnosis was that M.L. had suffered sexual abuse with vaginal and anal penetration.
|fiDr. Springer also examined the photograph of the victim’s mother’s sex toy, and opined that it was very unlikely that M.L. used the object to injure herself because of the magnitude of pain that would be involved, and she was unsure that a child could generate the amount of force necessary to cause M.L.’s injuries. Finally, and of significance, Dr. Springer opined that it was not unusual for sexually abused children to suffer from post-traumatic stress, causing them to lack the ability to recall the event, and she was therefore not sur *545 prised that M.L.’s story had changed over the course of the proceedings.
M.L.’s mother, Nicole, testified that whereas she had no idea how M.L. had gotten her injuries, she believed some abuse occurred. Nicole testified that she believed M.L. Importantly, Nicole confirmed that her work schedule and Lu-bom’s work schedule were made so that only one parent would be home with the children at a time, verifying that he would have been home alone with M.L.
Here, we believe the evidence against Lubom was more than sufficient to support his conviction. The jury heard directly from M.L., who identified her father in the courtroom and repeated the accusations in his presence. Obviously, the jury was in a superior position to observe M.L.’s demeanor and assess her credibility. Notably, the testimony of the victim that her father had vaginal and/or anal sex with her was alone sufficient to support the conviction. State v. Robinson, 2002-1869 (La.04/14/04), 874 So.2d 66, cert. denied, 543 U.S. 1023, 125 S.Ct. 658, 160 L.Ed.2d 499; State v. Ponsell, 33,543 (La.App. 2d Cir.08/23/00), 766 So.2d 678, writ denied, 2000-2726 (La.10/12/01), 799 So.2d 490. Even so, M.L.’s testimony was corroborated by the physical examination conducted by Dr. Springer, a pediatrician with special expertise in child abuse medicine. We find it significant, as the jury surely did as well, that M.L. originally reported to Aubrey that the latest incident had occurred within the past week-a report which was corroborated by Dr. Springer’s physical examination of the young child. Moreover, Dr. Springer’s physical findings corroborate M.L.’s specific description of the nature of her abuse.
The jury heard the testimony discussed herein. Notably, the jury had the opportunity to hear from the victim and observe her demeanor, as well as her cross-examination. Viewing the evidence in the light most favorable to the prosecution, it was reasonable for the jury to find that the state proved the elements of aggravated rape beyond a reasonable doubt. Lubom’s conviction for this heinous crime, as well as his life sentence which he does not appeal, were just and deserved. This assignment of error is without mérit.
Lubom also argues that the trial court erred in denying his objection at trial regarding Paxon’s testimony, which was elicited by the state regarding M.L.’s vacillating account of her story. Lubom maintains that Paxon, a lay witness, offered “expert” opinion testimony and that said evidence was instrumental to his conviction. Without making a determination as to whether the trial court acted improperly and simply accepting Lubom’s assertion as true, we consider the inclusion of the testimony as harmless error for the following reasons.
[¿¡Harmless error analysis begins with the premise that the evidence is otherwise sufficient to sustain the conviction if viewed from the perspective of a rational factfinder and asks whether beyond a reasonable doubt the error could not have contributed to the verdict actually returned by the defendant’s jury. State v. Hill, 41,031 (La.App. 2d Cir.05/17/06), 930 So.2d 336, citing State v. Haddad, 1999-1272 (La.02/29/00), 767 So.2d 682, cert. denied, 531 U.S. 1070, 121 S.Ct. 757, 148 L.Ed.2d 660 (2001). The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).
*546 When considering the cumulative evidence at trial in this case, it is incontestable in our view that the guilty verdict against Lubom was unattributable to the error claimed by Lubom. Paxon’s testimony that Lubom found objectionable was of minuscule significance when compared to the volume of other evidence presented at his trial. As we have discussed, there was unquestionable physical evidence that M.L. was horribly abused — evidence which the jury heard and carefully assessed in reaching its guilty verdict. The jury heard from Dr. Springer, an eminently qualified expert in the field of child sexual abuse. She opined regarding the physical evidence of M.L.’s abuse, as well as gave her opinion that it was not unusual for sexually abused children to suffer from post-traumatic stress, causing them to lack the ability to recall • the event; thus, Dr. | ^Springer’s opinion provided a reasonable explanation for M.L.’s vacillation between denying her abuse and her claims against her father. Clearly, Dr. Springer’s testimony was sufficient to provide, an explanation to the jury regarding M.L.’s variance.[2] Moreover, Harvey, M.L.’s maternal grandmother, whom M.L. lived with for a short time after her accusations and to whom she opened up about the abuse, felt that Nicole had pressured M.L. to change her story. Notably, as a family member, Harvey would have been privy to the family dynamics involved in this matter, and her view of the situation was obviously significant.
Therefore, we conclude that even if the trial court improperly allowed Paxon’s testimony, said error was harmless and unattributable to Lubom’s conviction in light of the other evidence on the same issue, as well as the ample evidence necessary to convict Lubom of aggravated rape. This assignment of error is without merit.
Conclusion
For the stated reasons, the conviction and sentence of Melvin Wayne Lubom is affirmed.
AFFIRMED.

. We note that Lubom's appellate counsel erroneously states in brief that M.L. repeatedly testified at trial under oath that her father did not ever touch her inappropriately. This is patently untrue — her trial testimony was consistent and supportive of the charges against Lubom.

. We find it telling that M.L.'s account varied in only one way: the claim against her father and a complete denial of the occurrence of any abuse (which is obviously not true as shown from her physical examination). Significantly, she never accused anyone else of abusing her.