WILLIAMS, J.
LThe defendant, Kenneth Mitchell, was charged by bill of indictment with aggravated rape, a violation of LSA-R.S. 14:42, and cruelty to persons with infirmities, a violation of LSA-R.S. 14:93.3. Following a jury trial, he was found guilty as charged. He was sentenced to serve life in prison for the aggravated rape conviction and 10 years at hard labor for the cruelty to persons with infirmities conviction. For the following reasons, we affirm.
FACTS
*863 The victim in this matter, G.S.,[1] is profoundly intellectually disabled, with an I.Q. of less than 16;[2] she has the intellect/mental capacity of a two-year-old child. The medical evidence introduced at trial reveals that G.S. has an affable personality and she had a desire to please her family members. At the time of the instant offense, G.S. lived with her mother and other various relatives, including her niece, Frances Scott, and the defendant, G.S.’s brother-in-law. G.S. was 58 years old; the defendant was 44 years old.
The testimony at trial revealed the following facts. On August 4, 2012, at approximately 6:00 a.m. or 7:00 a.m., Scott walked into her kitchen and saw the defendant “raping” G.S. on a sofa that was located in the kitchen. Scott indicated that she was less than four feet away from the defendant and G.S.; and could clearly see the defendant on his knees on the sofa, with G.S.’s legs on his shoulder. She reiterated that the defendant was 12“having sex” with G.S. Scott unequivocally testified that she saw the defendant’s penis going inside G.S.’s vagina and that she “could smell sex in the air.”
Scott further testified as follows:
[The defendant] didn’t even notice I was even there, he was so caught up doing what he was doing. But she [G.S.] looked over at me. She had her hands across her like this and like her eyes [were] pleading with me, like do something about this. And I stood there for a second. I don’t know if I was shocked or what, but when I came to, I was like oh my God, and that’s when he looked up.
Additionally, Scott stated that she ran down the hallway to telephone her mother, but her mother did not answer her phone. When she returned to the kitchen, the defendant was “sitting on the chair and a half’ watching television and G.S. had returned to her room. According to Scott, she began hitting the defendant and subsequently put him out of the house. At this time, she could hear G.S. yell from her room, calling the defendant “nasty” and/or saying “get your nasty ass out.”[3] Scott testified that she got in her car and traveled to the house where the defendant’s wife lived. They then went to the police station and reported the incident. When asked again about what sh,e had witnessed, Scott testified, “I know sex and he was having sex with her.”
On cross-examination, the defense attorney questioned Scott about G.S.’s hygiene, implying that when Scott testified that she “smelled sex in the air,” she was actually smelling G.S.’s vagina. Scott admitted that G.S. |s“had a problem with taking care of her personal hygiene” and had “sitters” who bathed her “on a day-to-day basis.” Scott also admitted that at the time of the incident, G.S. had not yet been bathed for the day. Nevertheless, Scott reiterated that she saw the defendant having sexual intercourse with G.S.; she specifically repeated that she saw the defendant moving his hips and his penis was “going in and out” of G.S.’s vagina. She also stated that *864 G.S. was not moving; the defendant “was the one doing all the moving.”
Detective Eric Newnum, of the Bastrop Police Department, testified as follows: he was the on-call detective on August 4, 2012; he received a call from Sergeant Boling in reference to a rape; he talked with the victim and tried to communicate with her but was unable to understand her responses; he recommended the Children’s Advocacy Center (“CAC”) to the family as an alternative; he spoke with Scott and she relayed the above events that she witnessed on the morning in question;[4] he took photographic evidence of the sofa where the alleged act took place; he took the photograph from a four-to-six foot vantage point, as this was how far Scott indicated she was from the sofa when she observed the act taking place; Scott told him the lights were on in the room where the act was taking place and daylight was also shining into the room; Scott’s exact words to him were that she saw the defendant’s penis going inside of G.S.’s vagina; no rape kit was utilized in this case because “having an eyewitness to a rape is Erare”; he was unable to locate the defendant on the day in question; he later received information that the defendant had checked into a rehabilitation center in Rayville, Louisiana; he secured an arrest warrant and arrested the defendant at Rayville Recovery;[5] he identified the defendant in court as the person he arrested for this alleged crime.
Dr. Frank Bennett, a clinical psychologist, testified at the trial in this matter. He testified that he last evaluated G.S. on March 3, 2005, and he performed two tests: the Slocum Intelligence Test and the Vineland Adaptive Behavior Scales. According to Dr. Bennett, the tests performed ranged from communication to daily living skills and socialization. From these tests, Dr. Bennett concluded that G.S. has an I.Q. score of less than 16 as the tests do not score lower than 16. He also concluded that G.S. only received credit for two years and five months. Dr. Bennett further testified as follows: an I.Q. is a measure of various aspects of what people do each day, such as their cognitive skills, ability to reason, ability to think logically, ability to think abstractly, language skills, memory skills and ability to perform various tasks; in his professional opinion, G.S. is incapable of making informed decisions; G.S. has a vocabulary of less than 50 words; G.S. thus has' a profound intellectual disability, meaning she is at the lowest level of intellectual disability.
Dr. Allen Spires, a general practitioner, testified as follows: he has been providing medical treatment to members of the Scott family since the 1980s; he has treated G.S. on a yearly basis since Dr. Bennett’s evaluation; fiG.S. was always assisted by one of her sisters during her medical appointments; G.S.’s condition of mental retardation has stabilized, but had not improved.
The jury unanimously found the defendant guilty as charged. During the sentencing hearing, the defendant orally moved for post-verdict judgment of acquittal and for new trial. Both motions were denied. Thereafter, the defendant was sentenced to the statutorily mandated sentence of life at hard labor without the benefit of probation, parole or suspension *865 of sentence on the conviction of aggravated rape. With regard to the cruelty to persons with infirmities conviction, the defendant was sentenced to serve 10 years at hard labor, with the first year to be served without the benefit of probation, parole or suspension of sentence. The sentences were ordered to run concurrently, with credit for time served. The trial court denied the defendant’s motion to reconsider sentence.
The defendant appeals.
DISCUSSION

Sufficiency of the Evidence—Aggravated Rape

The defendant contends the evidence was insufficient to support his conviction for aggravated rape. He argues that his conviction was based solely on the testimony of Scott. The defendant also argues that the state did not introduce any physical evidence to prove that he engaged .in sexual intercourse with G.S. Additionally, the defendant asserts that even if he did engage in sexual intercourse with G.S., the state did not introduce any evidence to prove that she was incapable of resisting the sex act due to her |fimental infirmity.
When issues are raised on appeal, both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proven beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
Under the Jackson v. Virginia standard, we review the record in the light most favorable to the prosecution to determine whether the evidence was sufficient to convince any rational trier of fact that all the essential elements of the crime had been proven beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in LSA-C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that.evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Parker, 42,311 (La.App.2d Cir.8/15/07), 963 So.2d 497; State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
Where there is conflicting testimony about factual matters, the resolution *866 of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, unit denied, 2002-3090 (La.11/14/03), 858 So.2d 422.
 The trier of fact is charged to make a credibility determination and |smay, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee fundamental due process of law. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000). Credibility determinations are the province of the trier of fact. State v. Johnson, 38,927 (La.App.2d Cir.11/23/04), 887 So.2d 751; State v. Powell, 27,959 (La.App.2d Cir.4/12/96), 677 So.2d 1008, writ denied, 96-1807 (La.2/21/97), 688 So.2d 520.
In the absence of internal contradiction or irreconcilable conflict with other evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Winzer, 49,316 (La.App.2d Cir.10/8/14), 151 So.3d 135; State v. Lubom, 42,297 (La.App.2d Cir.8/15/07), 963 So.2d 541.
LSA-R.S. 14:42 provides, in pertinent part:
A. Aggravated rape is a rape[6] committed upon a person ... where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
[[Image here]]
(6) When the victim is prevented from resisting the act because the victim suffers from a physical or mental | ainfirmity preventing such resistance.
[[Image here]]
C. For purposes of this Section, the following words have the following meanings:
[[Image here]]
(2) “Mental infirmity” means a.person with an intelligence quotient of seventy or lower.
Thus, in the instant case, the state was required to prove that the defendant engaged in: (1) anal, oral or vaginal sexual intercourse with G.S. without her lawful consent; and (2) G.S. was prevented from resisting the act because she suffers from a mental infirmity (I.Q. below 70), which prevents such resistance.
Our review of the trial evidence shows that these elements were clearly proven. Frances Scott, the eyewitness to the offense, testified that she was standing *867 approximately four-to-six feet away from a sofa in a home that she, the victim, and the defendant shared. According to Scott, a light was on in the room and daylight was shining into the room through the windows. Scott testified that she saw the defendant on his knees and G.S.’s legs over his shoulders and that she could see the defendant’s penis going inside G.S.’s vagina and that she could “smell sex” in the air.
Furthermore, the evidence established that G.S. was unable to consent to the act and was prevented from resisting because of her profound mental infirmity/intellectual disability. Dr. Bennett testified that G.S. has an I.Q'. score lower than 16, meaning that she has the intellectual/mental/social ability of a two-and-a-half year old child. Dr. Spires also testified with regard to G.S.’s mental infirmity.
It is apparent that the jury found the testimony of the witnesses to be 1 ,ncredible. For these reasons, we conclude that the state’s evidence was sufficient, beyond a reasonable doubt, to sustain the conviction for aggravated rape. This assignment lacks merit.
Sufficiency of the Evidence — Cruelty to Persons with Infirmities
The defendant also contends the evidence was insufficient to support his conviction for cruelty to persons with infirmities. He argues, that the state did not prove that his actions caused the victim to suffer any “unjustifiable pain or suffering.” He also argues that there was no evidence that the victim was crying or bleeding during or after the act, and there was no evidence that she suffered any bruises to her body.
Cruelty to persons with infirmities is the intentional or criminally negligent mistreatment or neglect by any person, • whereby unjustifiable pain, malnourishment, or suffering is caused to a person with an infirmity or a disability. LSA-R.S. 14:93.3. “Unjustifiable,” within the meaning of LSA-R.S. 14:93.3, is a term of limitation intended to distinguish that pain and suffering which is an inevitable consequence of care and treatment from that which is not justified by medical needs. State v. Brenner; 486 So.2d 101 (La.1986); State v. Browhow, 41,686 (La.App.2d Cir.12/13/06), 945 So.2d 890.
Thus, to support a conviction of cruelty to persons with infirmities, the state was required to prove that the defendant intentionally mistreated G.S., a person with an infirmity, whereby G.S. suffered pain or suffering which was not a consequence of any medical needs.
There is no dispute regarding G.S.’s mental infirmity. The evidence | nis clearly sufficient in this regard. The evidence sufficiently proved the defendant intended to mistreat G.S., a person known to him to have a profound intellectual disability. The evidence revealed that the defendant had known G.S. and her family for over 10 years; he lived with her and was married to her sister. Therefore, he was familiar with her mental infirmities, affable nature, socialization skills and her “desire to please her family.” The evidence also showed that the defendant was approximately six feet tall; G.S. was approximately four feet, nine inches tall. The defendant had G.S. on the sofa, with her arms across her chest, and her legs thrown across his shoulders. In that position, her movements were severely restricted, and escape was virtually impossible, even if G.S. had known that she should attempt to escape. Scott testified that G.S. was pleading with her eyes, as if she wanted Scott to do something. The defendant’s actions, notwithstanding the actual rape, demonstrated cruelty. We find that it is a reasonable inference that the defendant’s *868 conduct would have caused unjustifiable pain or suffering to G.S. However, whether or not such pain or suffering was actually-proven is not relevant to whether the evidence supports a conviction for cruelty to persons with infirmities. The evidence need only be sufficient to prove that the defendant actively desired to cause the proscribed criminal consequences to follow his act and that he committed the act for the purpose and tending directly toward the accomplishing of that object. See, State v. Browhow, supra. The reprehensible actions of the defendant established that he had a specific intent to mistreat G.S. Furthermore, his actions also sufficiently established |12his intent to cause the proscribed pain or suffering to her.
Accordingly, we find that any rational trier of fact could have found that the state met its. burden of proving the essential elements of the .offense of cruelty to persons with infirmities. Thus, this assignment lacks merit.

Double Jeopardy

The defendant also contends the convictions for both aggravated rape and cruelty to persons with infirmities violate double jeopardy. He argues that his convictions for both offenses were based on the same evidence. According to the defendant, the alleged aggravated rape was the sole basis for the cruelty to persons with infirmities charge, and without the rape, there was no cruelty. Therefore, he was tried twice for the same offense.
The Fifth Amendment to the United States Constitution provides that no person shall be “subject for the same offense to be twice put into jeopardy of life or limb.” State v. Redfearn, 44,709 (La.App.2d Cir.9/23/09), 22 So.3d 1078, writ denied, 2009-2206 (La.4/9/10), 31 So.3d 381; State v. Brown, 42,188 (La.App.2d Cir.9/26/07), 966 So.2d 727, writ denied, 2007-2199 (La.4/18/08), 978 So.2d 347. The double jeopardy clause was made applicable to the states through the 14th Amendment, and Article 1, § 15, of the Louisiana Constitution contains a similar guarantee. Id. The guarantee against double jeopardy provides three central constitutional protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and, (3) protection against multiple punishments for the same offense. State v. Crandell, 2005-1060 (Lag/10/06),13 924 So.2d 122; State v. Redfearn, supra.
The two tests used by Louisiana courts when examining double jeopardy violations are the “distinct fact’’[7]Blockburger test and the “same evidence test.”[8] Under the Blockburger test; two offenses are not the same for purposes of double jeopardy if “each crime requires proof of an additional fact which the other does not.” State v. Price, 39,582 (La.App.2d Cir.3/23/05), 899 So.2d 633; State v. Barakat, 38,419 (La.App.2d Cir.6/23/04), 877 So.2d 223. If multiple charges constitute double jeopardy under Blockburger, then the inquiry need not go further, since the constitutional prohibition against double jeopardy will have been abridged.
The “same evidence test” is a much broader test for purposes of double jeopardy:
Jf the evidence required to support a finding of guilt of one crime would also have supported the conviction of another, the two are the same offense under a plea of double jeopardy, and a defendant *869 can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial.
[[Image here]]
The “same evidence test” is somewhat broader in concept than Blockburger, the central idea being that one should not be punished (or put in jeopardy) twice for the same course of conduct.
State v. Price, 899 So.2d at 635, citing State v. Knowles, 392 So.2d 651 (La.1980).
An accused who commits separate and distinct offenses during the same criminal episode or transaction may be prosecuted and convicted for each offense without violating the prohibition against double jeopardy. State v. Nichols, 337 So.2d 1074 (La.1976); State v. Smith, 44,011 (La.App.2d Cir.4/8/09), 7 So.3d 855; State v. Redfearn, supra. If double jeopardy is found, the proper remedy is a vacation of the conviction and sentence for the lesser-punishable offense. State v. Williams, 45,755 (La.App.2d Cir.11/3/10), 54 So.3d 1129.
Applying the Blockburger test in the instant case, we find that a conviction for aggravated rape requires proof of additional facts that cruelty to persons with infirmities does not, and vice versa. Aggravated rape requires proof that the defendant engaged in anal, oral or vaginal sexual intercourse without the lawful consent of the victim. The rape/sexual intercourse element is not required for proof of cruelty to persons with infirmities. Conversely, cruelty to persons with infirmities requires proof that the offender intentionally mistreated or neglected a person with a physical or mental infirmity or disability, thereby causing unjustifiable pain or suffering. The intentional mistreatment/unjustifiable pain or suffering requirements are not necessary elements of the offense of aggravated rape. Accordingly, the defendant’s convictions for aggravated rape and cruelty to persons with infirmities do not constitute double jeopardy under the Blockburger test.
However, our inquiry does not stop there. We must apply the “same evidence” test and determine whether all the evidence required to support a finding of guilt of aggravated rape also supported the conviction for cruelty to persons with infirmities. As this Court noted in State v. Redfearn, supra, | ^application of the “same evidence” test is often difficult when the allegedly separate offenses arise out of one occurrence.
In State v. Redfearn, supra, the defendant was convicted of both sexual battery and aggravated incest stemming from the same incident. This Court held that the evidence required for the conviction of sexual battery was not the same evidence required for aggravated incest. For the former charge, evidence was sufficient to show that the defendant engaged in a lewd and lascivious act by fondling himself in the presence of his daughter with the specific intent of gratifying himself. On the latter charge, evidence showed that the defendant rubbed his penis on the victim’s vagina. Additionally, evidence of the child’s relationship to the defendant by blood, marriage, or adoption was required. Thus, under the “same evidence” test, we found that the defendant was not subjected to double jeopardy.
Similarly, in State v. Drake, 46,232 (La.App.2d Cir.6/22/11), 71 So.3d 452, the defendant, who was convicted of both aggravated burglary and forcible rape, argued that he had been subjected to double jeopardy. The evidence showed that the defendant entered the victim’s home without her consent. The victim awoke when the defendant hit her in her right eye. After a struggle, the defendant raped the victim. *870 This Court concluded that the aggravated burglary was 'complete when the victim awoke to the defendant standing over her. Subsequently, after a struggle, the defendant raped the victim. This Court concluded that the evidence to support the conviction of aggravated burglary was not the “same evidence” necessary for the conviction of forcible rape.
|1fiIn the instant case, we find that the evidence required for the conviction of aggravated rape was not the same evidence required for cruelty to persons with infirmities. For the aggravated rape charge, evidence of sexual intercourse was required, and the evidence was sufficient to show that the defendant engaged in vaginal sexual intercourse with a person who suffered from a mental infirmity. On the charge of cruelty to persons with infirmities, evidence of sexual intercourse was not required. The evidence was sufficient to show that the defendant mistreated G.S. by pinning her to the sofa, with her arms across her chest and her legs across his shoulders, thereby severely restricting her from movement or escape. Thus, under the “same evidence” test, we find that the defendant’s constitutional protection against double jeopardy was not violated.

Motion to Quash Petit Jury Venire

Further, the defendant contends the trial court erred in denying his motion to quash the petit jury venire. He argues that the jury venire should have been quashed because the presiding judge, as well as various other judges within the judicial district, “participated in excusing prospective jurors based on requests that came into the judge’s office[.]” According to the defendant, he was deprived of an opportunity to review or properly challenge the validity of the prospective jurors’ requests to be excused.
The court, the state, and the defendant shall have the right to examine prospective jurors. LSA-C.Cr.P. art. 786. However, LSA-C.Cr.P. art. 783 grants the trial court the discretion to “excuse a member of the petit jury venire at any time prior to the time he is sworn as a juror to try a partic-ularJjjcase.”[9]
The Louisiana Supreme Court has addressed the interplay between LSA-C.Cr.P. arts. 783 and 786. In State v. Gomez, 319 So.2d 424 (La.1975), the trial judge dismissed a prospective juror before any of the prospective jurors had been subjected to voir dire examination. The defendant argued that he had not been given the opportunity to examine the prospective juror before the juror was excused. The Court stated:
The apparent conflict between these two Code articles has been resolved by the jurisprudence by allowing the trial judge, within his sound discretion, to release prospective jurors [i]n advance of voir dire examination; the trial judge’s decision in this matter is not *871 disturbed unless there is a showing of fraud or collusion resulting in prejudice to the accused.
Id., at 425.
In the instant case, the prospective jurors of which the defendant 11scomplains were excused prior to being sworn as jurors. The trial judge’s discretion to excuse jurors is not disturbed unless there is a showing of fraud or collusion resulting in prejudice to the accused. The defendant has failed to show fraud or collusion resulting in prejudice. Accordingly, we find that the trial court did not abuse its discretion in excusing the prospective jurors from service. This assignment lacks merit.

Excessive Sentence-Aggravated Rape

The defendant also contends the life sentence imposed on the aggravated rape conviction was constitutionally excessive, considering the limited evidence in this case. He also argues that because of his history of alcoholism and limited education, the court should have ordered him to enter a rehabilitation program for alcoholism and/or a treatment program for sex offenders, and to attain a GED.
Appellate review of sentences for excessiveness is a two-pronged inquiry. First, the record must show that the sentencing court complied with LSA-C.Cr.P. art. 894.1. The court need not list every aggravating or mitigating factor so long as the record reflects that it adequately considered the guidelines. State v. Marshall, 94-0461 (La.9/5/95), 660 So.2d 819; State v. Linnear, 44,830 (La.App.2d Cir. 12/9/09), 26 So.3d 303. When the record shows an adequate factual basis for the sentence imposed, remand is unnecessary even in the absence of full compliance with the article. State v. Lobato, 603 So.2d 739 (La.1992); State v. Linnear, supra. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense, and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App.2d Cir.8/13/08), 989 So.2d 259, writ denied, 2008-2341 (La.5/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing. State v. Taves, 2003-0518 (La.12/3/03), 861 So.2d 144; State v. Caldwell, 46,718 (La.App.2d Cir.11/2/11), 78 So.3d 799.
Second, a sentence violates La. Const. Art. 1 § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is grossly disproportionate if, when the crime and punishment are viewed in light of the harm to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
Where there is a mandatory sentence, there is no need for the trial court to justify, under Art. 894.1, a sentence it is legally required to impose. State v. York, 48,230 (La.App.2d Cir.8/7/13), 121 So.3d 1226, writ denied, 2013-2154 (La.3/21/14), 135 So.3d 617; State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35.
The Louisiana Supreme Court has concluded that the mandatory |2nlife sentence for aggravated rape is a valid exercise of the state legislature’s prerogative to determine the length of sentence for crimes classified as felonies. See, State v. Foley, 456 So.2d 979 (La.1984). Additionally, this Court has affirmed the mandato *872 ry life sentence for convictions of aggravated rape. See, State v. Morrison, 45,620 (La.App.2d Cir.11/24/10), 55 So.3d 856; State v. Morning, 49,300 (La.App.2d Cir.10/1/14), 149 So.3d 925; State v. York, supra. Thus, the burden was on the defendant to rebut the presumption that a mandatory sentence is constitutional.
The downward departure from a mandatory sentence may occur in rare circumstances, if the defendant shows, by clear and convincing evidence, that he is exceptional, namely, that he or she is a victim of the legislature’s failure to assign sentences that ai’e meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. State v. Dorthey, supra; State v. Morrison, supra; State v. York, supra. Although courts have the power to declare a mandatory minimum sentence excessive under Article I, § 20 of the Louisiana Constitution, this power should only be exercised in rare cases and only when the court is firmly convinced that the minimum sentence is excessive. State v. Ponsell, 33,543 (La.App.2d Cir.8/23/00), 766 So.2d 678, writ denied, 2000-2726 (La.10/12/01), 799 So.2d 490.
Herein, in an effort to show that he is an “exceptional” defendant, for which a downward departure from the .mandatory | ¡h sentence is warranted, the defendant maintains that he has a history of alcoholism and a limited education. Therefore, according to the defendant, rather than being sentenced to prison, he should have been ordered to attain a GED and to enter treatment programs designed to address his alcoholism and his status as a sex offender.
We find that the trial court was legally required to impose the life sentence for aggravated rape. Furthermore, as noted above,- for crimes such as second degree murder and aggravated rape, the legislature has “tailored” the mandatory life sentence because the culpability of offenders and the gravity of the offenses are so great; thus, this is the kind of sentence that seldom, if ever, would qualify for a downward departure. See, State v. York, supra. Moreover, proof that the defendant has a history of alcoholism and a limited education does not constitute proof that he is “exceptional.” Thus, we find that the defendant has failed to clearly and convincingly show that he is “exceptional” and that the mandatory sentence is not meaningfully tailored to the gravity of the offense.
Excessive Sentence — Cruelty to Persons With Infirmities
The defendant also ai'gues that the maximum ten-year sentence imposed for the cruelty to persons with infirmities conviction was excessive. LSA-R.S. 14:93.3(E)(1) provides:
Whoever commits the crime of cruelty to any person with an infirmity, adult with a disability, or person who is aged shall be fined not more than [$10,000], or imprisoned with or without hard labor for not more' than ten years, or both. At least one year of the sentence imposed shall be served [¡¡¡¡without benefit of parole, probation, or suspension of sentence when the act of cruelty to persons with infirmities was intentional and malicious.
The trial court is given wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed will not be set aside as excessive absent .a manifest abuse of that discretion. State v. Williams, 2003-3514 (La.12/13/04), 893 So.2d 7; State v. Thompson, 2002-0333 (La.4/9/03), 842 So.2d 330; State v. Diaz, 46,750 (La.App.2d Cir. 12/14/11), 81 So.3d 228. A trial judge is in the best position to consider the *873 aggravating and mitigating circumstances of a particular case, and therefore, is given broad discretion in sentencing. State v. York, supra. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Williams, supra; State v. Free, 46,894 (La.App.2d Cir.1/25/12), 86 So.3d 29.
Generally, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. State v. Cozzetto, 2007-2031 (La.2/15/08), 974 So.2d 665; State v. York, supra. In those cases, appellate review of sentences for exces-siveness is a two-pronged inquiry.
In this case, prior to imposing the sentences, the trial court considered the factors set forth in LSA-C.Cr.P. art. 894.1. The court noted that the victim had an I.Q. between 20 and 16, or below, and that she functioned on the level of a two-and-a-half year old. The court ^characterized G.S. as a “nonfunctioning adult,” who requires assistance to take care of her own personal needs. The court noted that the defendant knew of the victim’s inabilities, as he lived with her. Further, the court noted that G.S. was incapable of consenting to sexual intercourse and there are no strong grounds to justify defendant’s behavior.
In addition to the guidelines set forth in LSA-C.Cr.P. art. 894.1, the court also reviewed the presentence investigation report. As mitigating factors, the court noted the defendant’s social history as follows: the defendant has been married for five years and has no children; he had an eighth grade education, having dropped out due to a “learning disability’; he had been employed as a meat cutter, a farmer, a construction worker and as a restaurant employee; he did not have a history of drug use; he had a lifelong addiction to alcohol; he indicated that he drank a 12-pack of beer daily with the addition of whiskey. With regard to the defendant’s criminal history,' the court noted that he had a history of prior delinquency and that he had “not led a law-abiding life.” The court characterized the defendant as a third-offender.[10]
Considering the factors articulated by the trial court, which are supported by this record, the 10-year sentence imposed does not shock the sense of justice. Consequently, we find that the trial court did not abuse its discretion in sentencing the defendant to serve 10 years atj^hard labor for the cruelty to persons with infirmities conviction.
Pro Se Assignment — Ineffective Assistance of Counsel
The defendant contends his trial counsel was ineffective because he failed to raise the claim of. double jeopardy with regard to the charges against him and failed to file a motion to reconsider the sentence. He also argues that he was denied his Sixth Amendment right to counsel because he is the victim of “selective prosecution.” Further, the defendant asserts a myriad of additional complaints, primarily concerning judges and public defenders in Morehouse Parish.[11]
*874 The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the United States Constitution. State v. Wry, 591 So.2d 774 (La.App. 2d Cir.1991). A claim of ineffectiveness of counsel is analyzed under the two-prong test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail under Strickland, supra, the defendant first must show that counsel made errors so serious that his performance was deficient. Second, he must show that counsel’s deficient performance prejudiced his defense.
As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief (“PCR”) in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentia-ry hearing under LSA-C.Cr.P. art. 930. State v. Cook, 48,355 (La.App.2d Cir.11/20/13), 127 So.3d 992, writ denied, 2013-3000 (La.5/30/14), 140 So.3d 1174; State v. Ellis, 42,520 (La.App.2d Cir.9/26/07), 966 So.2d 139.
|2r,In this matter, the defendant’s claim of double jeopardy was addressed by this Court. Additionally, as noted above, the defendant’s trial counsel made an oral motion to reconsider sentence at the conclusion of the sentencing hearing. Therefore, the defendant’s arguments with regard to those claims lack merit.
The remainder of the defendant’s claims of ineffective assistance of counsel would be more properly raised in an application for post-conviction relief. The defendant has raised numerous issues on appeal, specifically regarding the public defender’s office, as well as a claim of “undue judicial interference.” The record before us is not sufficient to resolve all of these issues on direct appeal; therefore, the claim of ineffective assistance of counsel would be more properly raised in an application for post-conviction relief.
CONCLUSION •
For the aforementioned reasons, the defendant’s convictions and sentences are hereby affirmed.
CONVICTIONS AFFIRMED; SENTENCES AFFIRMED.

. Initials of the victim are used in this case to protect the identity of the victim per LSA-R.S. 46:1844(W).

. The testimony and psychological examination introduced into evidence revealed that G.S. has the lowest measurable I.Q. She has a very limited vocabulary and she struggles with simple activities, such as attending to her personal hygiene, putting her shoes on the correct feet and using a telephone.

.Scott testified that G.S.’s speech was difficult to understand. However, she stated that she understood what G.S. was saying because she had close contact with her on a daily basis.

. According to Det. Newnum, Scott told him that as she was walking to the restroom, she observed G.S. lying on the couch on her back. She also informed him that G.S.'s pants were down and hanging off of one leg, and she observed G.S.’s legs over the shoulders of the defendant. She stated that the defendant was having sexual intercourse with G.S.

. Rayville Recovery is a drug and alcohol rehabilitation and treatment center.

. LSA-R.S. 14:41 defines rape as follows:
A. Rape is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent.
B. Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime.
[[Image here]]

. Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

. State v. Steele, 387 So.2d 1175 (La.1980).

. LSA-C.Cr.P. art. 783 provides:
A. The court may excuse a member of the petit jury venire at any time prior to. the time he is sworn as a juror to try a particular case. The panel shall be selected from the remaining members of the petit jury veniref.j
B. If jury service, whether criminal or civil, would result in undue hardship or extreme inconvenience, the district court may excuse a person from such service either prior to or after his selection for the general venire, jury pool, or jury wheel. The court may take such action on its own initiative or on recommendation of an official or employee designated by the court.
C. No person or group of persons shall be automatically excused.
D. In the event a person is excused because jury service would result in undue hardship or extreme inconvenience, the court may order that person's name be placed again in the general venire or in a central jury pool.

. The PSI revealed that the defendant had two prior convictions for simple burglary. He also had a DWI conviction and numerous other traffic-related offenses.

. The defendant maintains that the following factors, collectively, contributed to his lack of a right to counsel, thereby resulting in ineffective assistance of counsel:
• The Morehouse Parish Indigent Defender Office and its employees concealed from their clients the fact that they were underfunded and the fact that they were controlled by undue political interference, depriving all of their clients of their fundamental right to counsel.
*874 • The same public defenders, mentioned above, concealed the fact that a portion of their pay came directly from the persons who were convicted and had fines and fees assessed against them.
• Louisiana statutes do not safeguard against undue judicial interference.
• Gross underfunding places limitations on options available in representing clients.
• Client confidentiality is constantly abridged.
• Louisiana public defender statutes do not protect those accused of crimes from being victims of public defender overload, a workload that is in excess of all nationally recognized standards. This leads to poor quality representation.
• Louisiana statutes deprived petitioner of his federal constitutional Sixth Amendment right to counsel by permitting unqualified attorneys to be appointed to represent indigent defender cases for which they are not qualified to represent.
• A review of all prosecutor and IDB financial audits reveal that there is no parity between prosecution and indigent defender resources.
• The general training of continuing legal education is not specifically appropriate for indigent defense.
• Louisiana Statutes provide no guarantee that indigent defense attorneys be reviewed for quality.